UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL GERMAINE BURTON,

        Petitioner,               Case No. 1:22-cv-517

v.                                  Honorable Sally J. Berens

MICHAEL BURGESS,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006). After undertaking the review required by Rule 4, it appears that the petition is barred by the one-year statute of limitations. Nonetheless, the Court will permit Petitioner, by way of an order to show cause, an opportunity to demonstrate why his petition should not be dismissed as untimely.

## Discussion

I.     **Factual Allegations**

Petitioner Michael Germaine Burton is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> At approximately 7 a.m. on May 9, 2018, defendant shot Lawrence McDonald in front of a home on Cleveland Street in Lansing. A neighbor and a morning jogger witnessed the shooting. The neighbor observed defendant pull into the driveway in a silver Acura and approach McDonald, who was standing on the sidewalk. The neighbor testified that McDonald was unarmed and appeared surprised or scared to see defendant. Defendant accused McDonald of "asking about" him and acted threatening. The neighbor witnessed defendant shoot McDonald two or three times. When McDonald fell, defendant stood over him and shot him two to three more times. The jogger testified that he heard shots after he passed defendant and McDonald on the sidewalk. When he turned around, the jogger saw defendant standing over McDonald, shooting him.
>
> A utility worker driving through the neighborhood heard what he thought was "firecrackers going off." He then observed "a gentleman on the ground waiving [sic] up." He also saw a vehicle pull out of a driveway and drive past his work truck before a police car began following it. The utility worker called 911 and waited in his vehicle. While he waited, the utility worker saw a vehicle pull into the driveway near the victim. The vehicle was "possibly" the same car that left the scene earlier. A man exited the vehicle and kicked the man lying on the ground.
>
> A responding officer encountered defendant fleeing the scene in a silver Acura. Defendant led the officer on a high-speed chase. The officer abandoned the chase based on safety concerns. Shortly thereafter, defendant drove his vehicle into a ditch. Don Everett stopped to assist defendant and defendant stole his minivan. Defendant dropped his weapon in the process and forensics later connected the gun to the shooting. Defendant led the police on another high-speed chase in the stolen minivan, which ended when a pursuing officer rear ended him.
>
> In the meantime, McDonald was transported to the hospital where he died from his wounds. McDonald had been shot five times. The angles of the bullet wounds supported that McDonald was shot while laying on the ground. And McDonald had

> a blunt-force injury to his head with marks matching the handle of defendant's gun, suggesting that defendant also pistol whipped the victim.
>
> Defendant testified to a more complex series of events culminating in a shooting motivated by self-defense.

*People v. Burton*, No. 349081, 2020 WL 4036616, at *1 (Mich. Ct. App. July 16, 2020).

Based on these facts an Ingham County Circuit Court, convicted Petitioner of second-degree murder, in violation of Mich. Comp. Laws § 750.317, carjacking, in violation of Mich. Comp. Laws § 750.529a, carrying a concealed weapon, in violation of Mich. Comp. Laws § 750.227, felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f, third-degree fleeing a police officer, in violation of Mich. Comp. Laws § 257.602a(3), and fourth-degree fleeing a police officer, in violation of Mich. Comp. Laws § 257.602a(2), and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On May 15, 2019, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to a term-of-years sentence for each offense, but the controlling string is comprised of a sentence of 43 years, 9 months to 75 years to be served consecutively to a sentence of 2 years for felony firearm. Petitioner's earliest release date is February 8, 2064. MDOC Offender Tracking Information System, available at https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=866701 (visited June 9, 2022).

On June 6, 2022, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on June 6, 2022. (Pet., ECF No. 1, PageID.15.) The petitioner is postmarked June 7, 2022. (*Id.*, PageID.17.) And the Court received the petition on June 8, 2022.

## II. Statute of Limitations

Petitioner's application appears to be barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, Section 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on March 2, 2021. Petitioner did not petition for certiorari to the United States Supreme Court. (Pet., ECF No. 1, PageID.3.) The one-year limitations period,

4

however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired. *See Lawrence v. Florida*, 549 U.S. 327, 332–33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). The ninety-day period expired on May 31, 2021.

Petitioner had one year from May 31, 2021, until May 31, 2022, to file his habeas application. Petitioner filed his application on June 6, 2022. Obviously he filed more than one year after the period of limitations began to run.[1] Thus, absent tolling, his application is time-barred.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed"). Petitioner reports that he did not file any other petitions, applications or motions concerning the judgment of conviction in any state court. (Pet., ECF No. 1, PageID.3.) Accordingly, the running of the period of limitation was not tolled under Section 2241(d)(2).

The one-year limitations period applicable to Section 2254 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See, e.g.*, *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011); *Solomon v. United States*, 467 F.3d 928, 933

---

[1] Petitioner acknowledges that he filed his petition late. The form petition calls for the petitioner to explain why the one-year statute of limitations does not bar the petition if the judgment of conviction became final more than a year before the petition was filed. Petitioner explained: "prisons dealing with Covid19." (Pet., ECF No. 1, PageID.13.)

(6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case. The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen*, 366 F.3d at 403 ("'[I]gnorance of the law alone is not sufficient to warrant equitable tolling.'") (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)).

Petitioner's cryptic explanation that the statute of limitations does not bar his late petition because of "prisons dealing with Covid19" fails to show Petitioner's diligent pursuit of his rights or that an extraordinary circumstance prevented timely filing. It certainly does not explain why Petitioner could file his petition on June 6, but could not do so a week earlier. Petitioner will have an opportunity to expand on his explanation in response to this opinion. Nonetheless, based on the petition now before the Court, it does not appear that Petitioner is entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-

of-justice exception. In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner.]'" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327 (addressing actual innocence as an exception to procedural default)). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id.* at 399–400.

In the instant case, although Petitioner may baldly claim that he is actually innocent, he proffers no new evidence of his innocence, much less new evidence that makes it more likely than not that no reasonable juror would have convicted him. *Schlup*, 513 U.S. at 327, 329. Because Petitioner has wholly failed to provide evidence of his actual innocence, he would not be excused from the statute of limitations under 28 U.S.C. § 2244(d)(1). His petition therefore appears to be time-barred.

The Supreme Court has directed the District Court to give fair notice and an adequate opportunity to be heard before dismissal of a petition on statute of limitations grounds. *See Day*, 547 U.S. at 210; *see also Nassiri v. Mackie*, 967 F.3d 544, 548 (6th Cir. 2020). The Court will allow Petitioner 28 days to show cause why the petition should not be dismissed as untimely.

An order consistent with this opinion will be entered.

Dated:   June 15, 2022                                     /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          U.S. Magistrate Judge